UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

**JASMINE K. KENDALL,**                                                                                      **Plaintiff**

v.                                                                                              Case No.  3:15-cv-394-CHL

**COMMISSIONER OF SOCIAL SECURITY,**                                                **Defendant**

### Memorandum Opinion and Order

#### Introduction

Plaintiff Jasmine K. Kendall ("Kendall") filed this lawsuit against the Commissioner of the Social Security Administration.  (DN 1.)  Kendall challenges the Commissioner's decision to deny her disability insurance and supplemental security income benefits.   (*Id*. at 2.)

The parties have consented to Magistrate Judge jurisdiction.  (DN 11.)   For the reasons below, the Court will affirm the Commissioner's decision to deny Kendall's claims.  The Court will dismiss this action with prejudice.

#### Background

In January 2012, Kendall applied for disability insurance and supplemental security income benefits. (DN 7-6 at 149.)  She alleged that in 2011 she began suffering from obsessive compulsive disorder, anxiety, depression, bipolar disorder and frequent mood swings.  (*Id*. at 152.)  In support of these claims, Kendall provided a medical source report completed by her physician, Dr. Suellen Stevens, M.D., PLLC.  (DN 7-7 at 269.)

On initial review of both claims, the Commissioner consulted Dr. Robert Hodes, an independent state psychiatrist, to evaluate Kendall. (DN 7-3 at 93 – 94.)  Hodes determined that

Kendall had two severe impairments: a primary diagnosis of anxiety disorders and a secondary diagnosis of affective disorders. (*Id*. at 93.) Additionally, Hodes determined that Kendall was moderately restricted in her adaptation to changes in the work enjoyment, has moderate difficulty building relationships with coworkers, and has moderate difficulty traveling to unfamiliar places and using public transportation. (*Id*. at 96 – 97.) The Commissioner denied both claims, and found that Kendall was not disabled under the Social Security Act. (DN 7-4 at 111.)

In July 2012, Kendall requested reconsideration and alleged her condition was worsening. (*Id*. at 115.) On reconsideration the Commissioner consulted Dr. H. Thompson Prout. (DN 7-3 at 103 – 09) Prout determined that Kendall suffers from anxiety and affective disorders. (DN 7-4 at 103.) Ultimately, Prout affirmed Dr. Hodes's conclusions and agreed that Kendall was not disabled. (DN 7-3 at 109.) On July 27, 2012 the Commissioner affirmed the initial finding that Kendall was not disabled. (*Id*. at 100.) The Commissioner denied further reconsideration of Kendall's claims. (DN 7-4 at 119.)

In August 2012, Kendall requested a hearing before an Administrative Law Judge ("ALJ"). (DN 7-4 at 122.) On October 15, 2013, Kendall appeared with counsel before an ALJ. (DN 7-2 at 39.) During the hearing the ALJ heard testimony from Kendall and a vocational expert, Tina Strambaugh. (*Id*. at 30.) The ALJ found that Kendall was not disabled under the Social Security Act and issued a written ruling. (*Id*. at 39.)

First, the ALJ found that Kendall met the insured status requirements of the Social Security Act through December 31, 2012. (*Id*. at 41.) Second, the ALJ found that Kendall had not engaged in substantial gainful activity since March 3, 2011. (*Id*.) Third, the ALJ found that Kendall "ha[d] the following severe impairments: bipolar disorder, [depression]; social anxiety with agoraphobia; and obesity." (*Id*. (citing 20 C.F.R. § 404.1520(c) (brackets added).)

Fourth, the ALJ found that Kendall does not have an impairment or combination of impairments that meets or equals a listed impairment. (*Id*. at 42.) Fifth, the ALJ found that Kendall has the residual functional capacity to perform medium work. (*Id*. at 43.) Sixth, the ALJ found that Kendall is unable to perform her past relevant work. (*Id*. at 46.) Seventh, the ALJ found that Kendall is thirty-one years old and is categorized as an individual of a "younger age." (*Id*. at 46.) Eighth, the ALJ noted that Kendall has a high school diploma and speaks English. (*Id*.) Ninth, the ALJ explained that the transferability of past job skills is not necessary to determine potential employment. (*Id*.) Tenth, the ALJ found that there are a substantial number of jobs available to Kendall despite her limitations. (*Id*. at 47.) Eleventh, the ALJ concluded that Kendall was not disabled. (*Id*.) The Commissioner adopted the ALJ's decision when the Appeals Council denied Kendall's request for review. (*Id*. at 22.)

After the final decision, Kendall filed this action. (DN 1.) Now, Kendall's claims are fully briefed and ripe for review. (*See* DNs 19 & 24.)

## Standard of Review

"The Commissioner's conclusion will be affirmed absent a determination that the ALJ failed to apply the correct legal standard or made fact findings unsupported by substantial evidence in the record." *Kyle v. Comm'r Soc. Sec.*, 609 F. 3d 847, 854 (6th Cir. 2010). The Supreme Court has defined substantial evidence as "more than a mere scintilla," and it is sufficient that "a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal citations omitted).

## Discussion

Under the applicable regulations, the Commissioner must follow a five-step process to evaluate claims. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4))*; see Sullivan v. Finkelstein*, 496

3

U.S. 617, 620 (1990). Steps four and five are at issue in this case and include:

> IV: At the fourth step, we consider our assessment of your residual functional capacity and your past relevant work. If you can still do your past relevant work, we will find that you are not disabled.
> V: At the fifth and last step, we consider our assessment of your residual functional capacity and your age, education, and work experience to see if you can make an adjustment to other work. If you can make an adjustment to other work, we will find that you are not disabled. If you cannot make an adjustment to other work, we will find that you are disabled.

20 C.F.R. §§ 404.1520(a)(4)

Residual functional capacity is an assessment of the claimant's "remaining capacity for work once her limitations have been taken into account" and must be based on "all the relevant medical and other evidence." *Webb v. Comm'r of Soc. Sec.*, 368 F.3d 629, 632 (6th Cir. 2004) (internal quotation marks omitted).

### A. Credibility Findings by the ALJ

When substantial evidence supports an ALJ's credibility finding, the Court must "afford great weight" and deference to that credibility finding. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997). An ALJ's "credibility findings are virtually unchallengeable," and this Court cannot disturb a credibility finding without "a compelling reason." *Ritchie v. Comm'r of Soc. Sec.*, 540 F.App'x 508, 511 (6th Cir. 2013) (internal citations omitted). Thus, "the ALJ's findings as to a claimant's credibility are entitled to deference . . . because of the ALJ's unique opportunity to observe the claimant and judge her subjective complaints." *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001).

### B. The Treating Physician Rule

Generally, the Commissioner gives deference to the treating physician's opinion. *See Johnson v. Commissioner*, 652 F.3d 646, 651 (6th Cir. 2011). Nonetheless, "[t]he opinion of a treating physician does not receive controlling weight merely by virtue of the fact that it is from

4

a treating physician. Rather, it is accorded controlling weight where it is 'well-supported.'" *Massey v. Comm'r of Soc. Sec*, 409 F.App'x 917, 921 (6th Cir. 2011) (quoting *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009)). Such an opinion is well-supported when it is "supported by sufficient clinical findings" and is consistent with the totality of the evidence. *Combs v. Comm'r of Soc. Sec*., 459 F.3d 640, 652 (6th Cir. 2006). More specifically, the Commissioner may give a treating physician's opinion controlling weight "only where two conditions are met: (1) the opinion is well supported by medically acceptable clinical and laboratory diagnostic technique; and (2) the opinion is not inconsistent with the other substantial evidence in [the] case record." See *Buxton*, 246 F.3d at 774 (citing 20 C.F.R. § 416.927(c)(2)). . . Ultimately, in cases where substantial evidence did not support the treating physician's opinion, the Court has traditionally given deference to the ALJ and upheld the decision. *See Bowman v. Comm'r of Soc. Sec*., 208 F.3d 212 (6th Cir. 2000). Accordingly, when a plaintiff's argument "rests solely on the weight given to opposing medical opinions," there is "no sufficient ground for setting aside the findings of the ALJ" and the Commissioner's subsequent conclusions. *Bernola v. Comm'r of Soc. Sec.*, 127 F. Supp. 3d 857, 862 (N.D. Oh. 2015) (internal citations omitted).

When the ALJ finds that a treating physician's opinion lacks credibility, the claimant is nonetheless "entitled to receive good reasons for the weight accorded their treating sources independent of their substantive right to receive disability benefits." *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 876 (6th Cir. 2007).

In determining a treating physician's credibility, the Commissioner must evaluate the supportability, consistency, specialization, and treatment history to determine whether to give deference to the treating physician's opinion. *See* 20 C.F.R. § 404.1527(c) (outlining the factors

5

for consideration). . Though the ALJ must carefully consider all the information provided, it is not necessary to conduct an item-by-item analysis of these factors. *Hatmaker v. Comm'r of Soc. Sec.*, 965 F. Supp. 2d 917, 927 (E.D. Tenn. 2013). These procedural requirements enable claimants "to understand why the administrative bureaucracy deems them not disabled when physicians are telling them that they are." *Smith*, 482 F.3d at 875.

To weigh a treating physician's credibility, the Commissioner may consult a state agency physician for an independent opinion. 20 C.F.R. §§ 404.1527(e)(2)(i), 416.927. The Sixth Circuit has said that such opinions have "the strongest claims to neutrality." *Lucido v. Barnhart*, 121 F. App'x 619, 622 (6th Cir. 2005). It is within the ALJ's discretion to afford more weight to a state agency physician's opinion than a treating physician's opinion. *See Hatmaker,* 965 F. Supp. 2d at 926-27.

### C. Hearing Procedures

The ALJ may also ask a vocational expert hypothetical questions pertaining to employment opportunities available to the claimant. *Hernandez v. Colvin,* No. 1:16-CV-00069-HBB, 2016 U.S. Dist. LEXIS 172764 (W.D. Ky. Dec. 14, 2016) (quoting *Hardaway v. Sec'y of Health & Human Servs.*, 823 F.2d 922, 928 (6th Cir. 1987)). The question should include facts about the claimant's condition. *See Hernandez*, No. 1:16-CV-00069-HBB, 2016 U.S. Dist. LEXIS 172764 (W.D. Ky. Dec. 14, 2016). However, an ALJ may only include hypothetical facts that are supported by credible record evidence. *Smead v. Comm'r of Soc. Sec.*, 940 F. Supp. 2d 653 (S.D. Oh. 2013).

### Analysis

Kendall objects to findings five, ten, and eleven. She asks the Court to reverse the Commissioner's decision and remand for further proceedings. (DN 1 at 2.)

I. **Kendall's objection to finding five.**

Kendall first objects the Commissioner's fifth finding. The fifth finding says:

> After careful consideration of the entire record the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform medium work as defined in 20 C.F.R. 404.1567(c) except she is able to perform postural activities on a frequent basis with no climbing ropes, ladders or scaffolds, no kneeling, and no crawling. She must avoid hazards like machinery and heights, and must also avoid temperature extremes and humidity. She is further limited to simple, repetitive tasks. She is unable to perform production rate work, and she is not able to perform work involving contact with the public. She is limited to occasional contact with supervisors and co-workers.

(DN 7-2 at 43.)

To evaluate Kendall's claims, the ALJ compared the conclusions and treatment notes of Kendall's treating physician, Dr. Stevens, , Kendall's testimony, and the reports of two independent consulting physicians, Dr. Prout and Dr. Hodes. (*See Id*. at 43 – 46.) The ALJ found that Dr. Stevens's conclusions were not credible and did not give controlling weight to those opinions. (*Id*. at 45 – 46.) However, the ALJ found that the opinions of Dr. Hodes and Dr. Prout were "well supported and entitled to great weight." (*Id*. at 46.) Likewise, the ALJ found that Kendall's testimony about the "intensity" and "limiting effects" of her symptoms was not credible. (*Id*. at 44.) Notably, Kendall does not object to the ALJ's finding that her testimony was not credible. (*See* DN 19). Accordingly, Kendall has waived argument on this issue. *See Dixon v. Colvin*, Civil Action No. 5: 15-269-DCR, 2016 U.S. Dist. LEXIS 86488 (E.D. Ky. July 5, 2016); *See also Moore v. Comm'r of Soc. Sec.*, 573 F. App'x 540, 543 (6th Cir. 2014).

However, Kendall does object to both the ALJ's credibility finding with regard to Dr. Stevens's conclusions, and the ALJ's reliance on the opinions of the independent consulting physicians. (DN 19 at 315.) To support this argument, Kendall relies on a Sixth Circuit opinion in which the opinion of a treating physician was erroneously disregarded by the ALJ.

7

*Blankenship v. Bowen*, 874 F.2d 1116, 1121 (6th Cir. 1988).

### A. Substantial record evidence supports the ALJ's credibility finding for Dr. Stevens's opinion.

Kendall's treating physician, Dr. Stevens, provided a medical source report to the ALJ. (DN 7-7 at 269.) To support her opinion, Stevens described Kendall's symptoms, including "fear of having an illness, history of suicidal thoughts, and an inability to function outside of the house." (DN 7-7 at 269) Stevens also provided treatment notes from the time that Kendall was in her care. (DN 7-7 at 273 – 76; DN 7-7 at 230 – 67.) In this report, Stevens concluded that Kendall is "bipolar, depressed and suffers from social anxiety with agoraphobia." (DN 7-7 at 269.) Based on these impairments, Stevens found that her condition:

> places a moderate limitation on her ability to comprehend and follow instructions, severe impairment on her ability to perform work that requires frequent contact with others, and a moderately severe limitation on her ability to perform work that requires minimal contact with others, or requires the performance of simple tasks in a full-time work setting.

(*Id.* at 271 – 72.)

However, the ALJ found that Dr. Stevens's opinion was not entitled to controlling weight because it was inconsistent with both the treatment notes and Kendall's testimony. (DN 7-2 at 46 – 48.) In the decision, the ALJ noted that he was aware that he "must consider the opinion of a physician of record and that controlling weight must be given to the medical opinion of a treating physician if it is well supported by medical evidence and if it is not inconsistent with other substantial evidence." (*Id.* at 46.)

For instance, Dr. Stevens's treatment notes indicate that Kendall was stable in a therapy regimen which required one session every three months. (DN 7-7 at 247.) Additionally, the treatment notes indicated that Kendall's impairment only became "severe" in July 2012. (DN 7-2 at 45); (*See* DN 7-7 at 238.) The ALJ remarked that even in the July 2012 treatment note, Dr.

8

Stevens found that Kendall was stable and did not recommend more a more intensive therapy regimen. (DN 7-2 at 46.)

Kendall relies on *Blankenship* in arguing that the ALJ did not have good cause to disregard Dr. Stevens's opinions. (DN 19 at 320.)(*citing Blankenship v. Bowen*, 874 F.2d at 1121.) However, *Blankenship* does not apply to Kendall's case. *Blankenship* v. Bowen, 874 F.2d at 1121. In *Blankenship*, the ALJ disregarded the treating physician's opinion merely because the physician had not been treating the claimant for a long period of time. *Id*. In that case, the physician's opinion was overwhelming supported by what little medical evidence was in the record. *Id*. Kendall argues that in cases of mental illness, there is usually not a great deal of medical evidence because mental illnesses cannot be "probed by mechanical devices [sic]." (DN 19 at 320.) Furthermore, she argues that this is not a sufficient reason for an ALJ to dismiss the opinion of a treating physician. (*Id.* at 320.)

Here, however, the ALJ's credibility finding was based on the fact that the record evidence did not support Dr. Stevens's opinions. (DN 7-2 at 46.)

In addition to the treatment notes, the ALJ found that Dr. Stevens's conclusions were inconsistent with Kendall's testimony and previous work history. (*Id.* at 46.) Kendall testified that she had to quit her previous jobs because of stress and panic attacks. (*Id.* at 73–76.) However, in 2011, Dr. Stevens noted that Kendall had recently quit her job at the gas station because of a scheduling issue. (DN 7-7 at 267.) Moreover, Kendall testified that she has a valid driver's license, uses Facebook to interact with family, owns a variety of pets that she cares for, and takes day trips to the zoo with her father. (DN 7-2 at 68 – 69.) As the ALJ noted, these activities do not support the opinion that Kendall has a severe limitation in her ability to perform work requiring contact with others. Therefore, substantial evidence supports the ALJ's decision

9

to give Dr. Stevens's opinion little weight.

### B. Substantial record evidence supports the ALJ's reliance on the opinions of Dr. Hodes and Dr. Prout.

The Commissioner requested two independent physicians' opinions during the application process. (*See* DN 7-3 at 93, 108.) The ALJ gave considerable weight to their reports, which concluded that Kendall was able to understand, learn, follow instructions, and "retain simple and detailed work instructions," (*Id.* at 93; *Id.* at 108.) Furthermore, they concluded that Kendall is able to "get along with coworkers and peers" for work purposes. (*Id.* at 96; *Id.* at 107.)

Kendall argues that the independent physicians did not review "medical or other opinion evidence." (DN 19 at 313.) Furthermore, Kendall argues that if they did review the records provided by Dr. Stevens, they nevertheless "ignored" the July 26, 2012 treatment note that indicated Kendall's "worsening condition." (DN 19 at 313.)

Dr. Hodes performed his examination of Kendall and her record in May 2012. (DN 7-3 at 93.) In the report, Hodes cited to Dr. Stevens's treatment notes from February 2012 that stated Kendall was "trying to pain[t]. Can't so depressed." (DN 7-3 at 93)(brackets added.) Nevertheless, Hodes concluded that Kendall was not severely limited. (DN 7-3 at 93 – 95.)

Dr. Prout examined Kendall on July 27, 2012. In the report, Prout affirmed Hodes' conclusion that Kendall was not severely limited. (DN 7-3 at 106.) Notably, Prout cited to the July 26, 2012 treatment note, but indicated that it did not change his conclusion because it showed that Kendall was "stable on current therapy," despite her condition. (*Id.* at 104.)

Additionally, Kendall's own testimony about her capabilities—namely that she uses Facebook to keep up with family and takes trips to the Cincinnati Zoo—supports Prout's and Hodes's conclusions that she can interact with coworkers and peers. (DN 7-2 at 68 – 69.)

Furthermore, the absence of significant findings in the treatment notes, and recommended, infrequent therapy sessions, lend sufficient credence to the ALJ's credibility determination. (DN 7-7 at 273 – 76; *Id.* at 230 – 67.)

Given the ALJ's credibility findings as to Dr. Stevens's opinion and Kendall's testimony, substantial evidence supports the ALJ's weighing of the medical evidence.

## II. Kendall's Objection to Finding No. 10.

During the hearing, the ALJ asked a vocational expert, Tina Stambaugh, a hypothetical question about Kendall's potential employment opportunities. (DN 7-2 at 82.) Stambaugh testified that she reviewed Kendall's file before she appeared at the hearing. (DN 7 at 60.) Based on Stambaugh's testimony, the ALJ found that there were a significant number of positions available to someone with Kendall's restrictions. (DN 7-2 at 47.) Kendall objects to the Commissioner's tenth finding. (DN 19.) The tenth finding says "through the date last insured, considering the claimant's age, education, work, experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed." (DN 7-2 at 47.)

Kendall argues that the hypothetical question posed to the vocational expert only incorporated the findings of the state agency physicians and thus was not an accurate representation of Kendall's condition. (DN 19 at 10.) Moreover, Kendall argues that Stambaugh admitted that if Dr. Stevens's conclusions were taken into account, Kendall's condition would prevent her from performing "any jobs." (*Id.*)

During the hearing, the ALJ asked Stambaugh questions that included details of Kendall's condition. (DN 7-2 at 83.) Then, the ALJ asked Stambaugh whether there are "jobs in the national economy" that a person like Kendall could perform. (*Id.* at 84.) The ALJ's

11

hypothetical asked Stambaugh to consider a person that:

> [C]an lift 25 pounds frequently, 50 pounds occasionally, and six hours in an eight hour day. Stand, walk six hours in an eight hour day. That person can frequently perform postural activities but never climb ladders, ropes or scaffolding, never kneel or crawl. The person must avoid hazards like machinery and heights, temperature extremes and humidity. The person can perform simple, repetitive tasks. No production rate pace work but rather goal oriented work. Can have occasional contact with co-workers and supervisors, and no contact with the public.

(*Id*. at 83.)

The ALJ's question relied on testimony from Kendall, and the conclusions of Dr. Hodes and Dr. Prout. (DN 7-2 at 83.) Specifically, the ALJ relied on their conclusions that Kendall had the capacity for "heavy and very heavy lifting," could follow simple instructions, and was able to occasionally interact with co-workers. (DNs 7-3 at 93, 96; DN 7-3 at 108.) The ALJ explained that these conclusions as to Kendall's limitations were based on the totality of the record evidence and were found credible. (DN 7-2 at 46.)

The ALJ also noted that, Kendall's own testimony supported the facts used in the hypothetical. (DN 7-2 at 66 – 70.) For instance, Kendall takes day trips to the zoo with her father and uses Facebook to interact with family. (DN 7-2 at 68 – 69.) Furthermore, she testified that she can lift 50 pounds and enjoys a variety of hobbies, including the care of her many pets. (DN 7-2 at 67 – 70.) Thus, even if the ALJ erroneously decided Dr. Stevens's opinion was not entitled to controlling weight, the question posed to Stambaugh was supported by substantial evidence of record.

It is well established that an ALJ is only required to incorporate those facts that are well-supported by the evidence and that have been deemed credible by the finder of fact. *See Hardaway*, 823 F.2d at 928. Here, the Commissioner found that the totality of the evidence was not consistent with Stevens's conclusions. (DN 7-2 at 46.) Accordingly, the ALJ found that

Stevens's conclusions were not credible. *See Casey*, 987 F.2d at 1235. Despite differing medical opinions, the ALJ's hypothetical is supported by substantial evidence because Kendall's own testimony and the independent consulting physicians' conclusions supported it.

### III. Kendall's Objection to Finding No. 11.

The Commissioner concluded that Kendall did not suffer from a "disability" as defined by the Social Security Act and affirmed the ALJ's decision to deny Kendall's claim to benefits. (DN 7-2 at 47.) Kendall objects to the Commissioner's final finding that she was not disabled. (DN 19 at 10.)

As discussed above, substantial evidence supports the ALJ's finding that Stevens's opinion was not credible. Similarly, the ALJ did not err in failing to include Stevens's conclusions in the hypothetical question posed to the vocational expert because such conclusions lacked credibility and support. Likewise, the ALJ did not err in relying on the neutral opinions of the state agency physicians who found that Kendall was not disabled.

Ultimately, substantial evidence supports the Commissioner's decision to deny Kendall's claims.

### ORDER

For these reasons, the Court **AFFIRMS** the Commissioner's decision to deny Kendall's benefits and **DISMISSES** Kendall's claims, **WITH PREJUDICE**. The Court will enter a final judgment in accordance with this opinion.